Good morning, your honors. I'm William Osterhout. I appear today on behalf of Appellant Sands. This is a habeas corpus case, and the issues raised have been briefed. I think, subject to the Court's questioning or questions, my main concern is with the prejudicial or misconduct during closing arguments. Under Darden v. Wainwright, in the Berger case, I think the first question in that inquiry would be whether the prosecutor's remarks were improper, and secondly, whether they were damaging. There is also a question of whether the issue was waived or forfeited by a failure to make a contemporaneous objection. We think it wasn't, but in any event, counsel at trial has supplied a declaration in the court below. You say it's not contemporaneous when he – his counsel didn't make it until the next day. How is that contemporaneous? Well, I think that it – a lot of cases say it's not contemporaneous. As one of the cases we cited in reply, the Smith case, where Judge Patel made an exhaustive review of these cases involving that rule, it turns out it hasn't been applied in many cases where somebody raised it the next day, if he raised it at the first opportunity the next morning. However, in any event, I think that there is cause and prejudice to excuse a procedural default if one existed. How's this – isn't that Fairbank's case? Are you familiar with that, the Fairbank's case? No. Oh, okay. Because it seems to be set forth that the failure to make a contemporaneous objection to a prosecutor's allegedly disparate remark raises a California State law procedural bar to resolving the underlying constitutional claim. You're saying this other case that – from Judge Patel says differently? Yes. There are numerous cases that she collected in support of a holding in that case that the California contemporaneous objection rule was not consistently applied in a manner that should be a procedural bar to habeas review.  that should be a procedural bar to haveeas review, however, Your Honor, we didn't raise that in our opening brief. You know, and the – we waited until the prosecutor had made the procedural bar argument and then we did cite the Smith case in reply. However, if it was barred procedurally, and for the sake of this argument, I'd be prepared to concede that. But it wasn't tactical. It was a mistake by him. He was in the heat of the moment. He considered the prosecutor's remarks to be an attack on his honesty and integrity. The next morning, he realized the – how injurious effect it had on his client's case. And the first opportunity, he lodged his objection and he asked for an instruction, and that was denied. It would have clarified, that would have explained to the jury that he didn't fabricate evidence and that he didn't hide anything from the jury and these injurious allegations. So – and we've also, under Brecht v. Abramson, I think, satisfied a prejudice wing of that rule of cause and prejudice. This case was, in some ways, even though you can marshal the evidence and say there was a lot of it, it was really balanced on a knife edge in certain ways. It was a circumstantial case. And the evidence was just as consistent on the murder charge with Mr. de Bergerac having committed it as it was Mr. Sands. It was the same opportunity and there was a motive. And counsel eloquently and counsel with passion and counsel with feeling and emotion as he always does, marshaled that evidence in support of the inferences he was urging. He didn't lie in his statement, in his argument to the jury. He didn't misstate the prosecutor interrupted several times. Only one of them was even nearly sustained when he started to tell the jury what gunshot residue was, but that he quickly conceded at. Every other objection by the prosecutor to him was overruled. His argument was proper. It contained no ad hominem attack on the prosecutor. But her argument was consistent. It began with an ad hominem attack on him. It said, Mr. Serra is a good lawyer. He's an expensive one, apparently. That was improper. She based that, of course, on an orbital comment by the client, by Mr. Sands during his examination, when he, not during his examination, I'm sorry, in a wiretap, when he said to somebody, this cost me an arm and a leg, this case. That was just his comment. We don't know what it really entailed. But to say he's expensive immediately focused the jury on the lawyer rather than the evidence. And that set the stage. You see, what bothered the prosecutor, it appears to me, was the knife, because the knife in the Clark stabbing was never found. There was no knife ever found. The evidence that Mr. Sands did the stabbing was less than powerful. Nobody ever saw him with a knife, including the victim. Somebody hit the victim in the chest. It turned out he was stabbed in the stomach. And so Mr. Serra was arguing, emphasizing the lack of a knife. And the prosecutor said, well, there's not enough evidence. Sometimes things don't come into evidence. He didn't say sometimes aren't found at the scene, which would have been proper. But the suggestion that it may have been there, not in evidence, was wrong. And equally damaging was the thing about how he, you know, he's a good eloquent speaker or lawyer, however she put it, but he can ignore evidence and fabricate evidence. Ignoring evidence is a proper comment. And I think that's a very serious allegation on him, because she can say, Mr. Serra, in his inferences, he wants you to draw. He's not he's ignoring certain evidence. Fabricating is a different matter. That's a very serious allegation on him. And that shouldn't have been made. And I think she was stung by the knife, made several objections to his argument. He never responded personally. The most he ever said was, counsel, I could have stepped into your argument ten times. But then he resumed properly. And he does. I mean, that's Mr. Serra. He is eloquent and he is emotional and he is passionate and powerful, but he doesn't lie. And in this case, Sand needed powerful counsel, because they built a case against him and it was a serious case and they had what they thought was strong evidence. He needed to show why the threat that Ramirez would testify against him in the stabbing case wasn't a powerful motive to kill Ramirez. So he had to attack the stabbing case, and that's what he did. He had to show that the Berger Act had an equally strong motive and opportunity. The cellular footprints and the like showed that was true. So the prosecutor put her thumb on the scales in an improper way, I respectfully urge, by attacking him rather than concentrating on his evidence. I'm saying there's no possible strategic reason why defense counsel would not have objected. Yes. That's what he says. Is that what you're saying? Yes. There's no possible strategic reason why. Is there a motion to suppress? In which case? In the trial. Yes. Wiretap evidence. Wiretap. The judge didn't certify that. We approached it and I'd be happy to argue it. No, no, no. I was just wondering the evidence with respect to carrying a knife. Was that? No. There was never a knife found. There's no knife. But the implication is that there might have been and it was suppressed in some way by the lawyer. And she also said that Mr. Serra stuffed words into the mouth of a witness. It's kind of crudely put. It's okay to say that the question was suggestive. This had to do with the brother-in-law de Vera. Mr. Serra had given him a package to hold which has a gun. And the question was whether didn't Serra, didn't, excuse me, didn't Sands tell you that, did he tell you that he had been given the gun by somebody else to hold? He said yes. And the prosecutor said that was a lie, which he was entitled to say. But she said it was stuffed in his mouth by counsel. And it really wasn't. So I think it was wrong. And I think it was highly prejudicial. Even that, I think, focused again on lawyer, ad hominem attack on lawyer. So I think it was wrong and I think it was highly prejudicial. Do you want to reserve a minute? I would like to do that, if Your Honor's please. Thank you so much. Thank you, Your Honors. And may it please the Court, this Court should affirm the district court decision. In this case, the claim is that there are three instances of alleged discouragement of counsel at rebuttal argument. J. Tony Serra decided not to object to any. This morning, he raised the issue. The prosecutor explained she was commenting on his penchant for commenting on evidence that never was presented to the trial court. The trial court decided that was the case and explained to Mr. Serra, we're talking about hours after this happened. You want me to create an admonition? Nothing I can do would correct Unring. But what I can do is modify Calgic number 102. In fact, it was modified to the effect that the jury was instructed by this trial court that statements made by the attorneys during trial are not evidence. This includes statements during closing arguments. Ultimately, ultimately. Let me ask you. Yes, ma'am. The prosecutor's remarks about defense counsel were out of line, weren't they? Were, really? I've, you know. Would you have said them? I wouldn't have said them. Okay. But plenty aggressive trial counsel would have objected had they been so far over the line. This was a very contentious case. The evidence in this case. That seems clear. It's very clear. And two able and aggressive trial counsel. In this case, nothing was below the belt so far so that it caused prejudice to the, ultimately to the defense or offended due process. Well, the remark the prosecutor made about the knife and it not coming into evidence and sometimes, you know, evidence doesn't come in when the prosecutor knew there was no knife found, what's, how do you explain that? Well, it was a side issue. There was evidence presented that Mr. Sands' friends who turned on him saw him carrying knives before. Clearly, the victim in this case turned on him and explained that it was Mr. Sands who conceded that he had stabbed this Australian tourist. That was the beef between the two ex-friends. So underlying, underlying, an underlying issue was whether or not Sands committed the stabbing, but ultimately. Well, how is that proper? How is that proper for the prosecutor to refer, knowing that evidence isn't in, to leave that impression possibly with the jury? How is that proper? Well, again, it was a side issue. And the focus ultimately was on whether this machine gun that Mr. Sands' brother-in-law turned over was the murder weapon. In fact, it was determined at one point. Go on to my next issue, but, because I don't see how that's proper. But despite the. Well, conceding it's improper, ultimately there was overwhelming evidence in this case. Well, let's go to that. Yes, Your Honor. What was the knife used for? There was a stabbing of an Australian tourist. All right. But that was not disputed, was it, that there was a stabbing? Right. And so everybody knew there was a knife. That's right. Because it had been found. And there was a stabbing and there was a. . . Yeah. So, I mean. . . It was a side issue. Ultimately. . . The existence of the knife was assumed by everybody. It was. Yeah. Someone was stabbed and someone suffered a collapsed lung as a result but survived. But ultimately. . . And I think it would be unnecessary for the prosecutor to just inject that into this. But. . . I would concede. Ultimately. . . Thank you. Ultimately go to what we have to consider in light of that. Mr. Sands. Or despite that. Mr. Sands' brother-in-law turned over the murder weapon, his Mr. Sands machine gun. Bullet. Or rather, forensic evidence determined that was the murder weapon. It was Mr. Sands' weapon. He had an underlying motive. He had a beef with the decedent. The decedent had snitched on his stabbing. He had a motive. More than damning are the telephone tape recordings showing Mr. Sands trying to affect the evidence, his ultimate evidence in this case, by telling precipient witnesses that he would cover them, he would pay for their litigation, et cetera. This was not a close case. The district court did not. . . The 12th. . . Rather, the state courts determined this was an overwhelming case. The district court agreed. The record before this court shows that this was an overwhelming case. This Court should affirm the district court. Unless I can answer more pointed questions from this panel, we would submit the matter. What was the reference to he doesn't get the benefit of applying things that he kept you from hearing? Well, the prosecutor was, was, was. . . Really wrong, improperly. The prosecutor was. . . There was an evidentiary ruling that the parties could not invade a certain area. The prosecutor's point was Mr. Sera violated the evidentiary ruling by essentially using the evidentiary ruling against the prosecutor against her by referring to facts not before the trial court, not before the jury. That was her point. But why is that proper to raise that in front of the jury? How is that? Well, it. . . It wasn't. The question is, does. . . It wasn't prejudicial. That's the question. Was it prejudicial enough in light of everything that. . . I argue it's not. Because. Because. And the lack of the objection at the time. And the lack of objection. There's, again, there was a pointed modified Kelgi construction informing the, informing the jury to ignore that. That is in evidence before them. And there's no evidence that the jury mistook that. And. . . And. . . But. . . And there is a question of whether, on the prejudice of whether or not it was, despite the, all the evidence here, whether or not the proper statement is made by the prosecutor. Yes. Yes. Yes. And. . . On balance, but. . . On balance, we are. . . Prosecutors get trained on what's appropriate and what's not appropriate to say during closing. Yes, they do. Yes, they do. On balance, the State courts found the alleged disparagement not overriding. And it's a fair reading of the record. The district court found the same.  Thank you. Thank you, Your Honor. Thank you, Your Honors. I believe the admonition the next day would have been perfectly appropriate. The Court didn't indicate why it would have been more effective the day before than it could have been when it was asked for. The knife was not a side issue. It was central to the case. Counsel properly called attention repeatedly to the fact that no knife was associated with Mr. Sands. I confess I don't. . . I don't see in the record his friend seeing him with a knife on that occasion. I don't think it's there because it was. . . it was emphasized and the prosecutor didn't object to that when. . . when Mr. Serra emphasized that nobody had associated a knife with Mr. Sands. The murder. . . was the gun the murder weapon? That wasn't absolutely established. There was no barrel on it, I think. And so it was of the type of gun that could have inflicted those wounds. No question about that. It wasn't so clear as all that, though. He had a motive, did he? Well, so did the Bergerac, Your Honor, and he didn't keep him from. . . he didn't keep the jury from hearing anything. And I think that it wasn't overwhelming. When you look at the evidence carefully and parse it and look at it, it wasn't overwhelming. It was a circumstantial case at its core. Nobody saw him shoot Ramirez. Nobody saw him stab Clark, including Clark himself. So I respectfully urge that this is a matter that was prejudicial under the Brecht standard, if it need be. Substantially injurious effect on this verdict. And I respectfully ask that this be overturned. Thank you. Thank you. Thank you both for your arguments. The case is submitted.
judges: Schroeder, Noonan, Murguia